**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Martin McGhee, | No. CV-19-08145-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| High Mountain Health LLC, et al., | |
| Defendants. | |

Pending before the Court is a motion to dismiss by High Mountain Health LLC, Aspen Management LLC, High River Consulting LLC, Red Bud Holdings LLC, Katherine Spillman, David Stilley, and Steven Thompson (collectively, "Defendants"). (Doc. 21.) For the following reasons, that motion will be granted and this action will be terminated.

## BACKGROUND

A.  Underlying Factual Allegations

The facts alleged in the complaint, which are presumed to be true for purposes of the motion to dismiss, are as follows.

Defendants own and operate a marijuana cultivation facility in Flagstaff, Arizona. (Doc. 1 ¶¶ 2-8, 39-40.) Plaintiff Joseph Martin McGhee worked for Defendants as a cultivation assistant between August 2017 and January 2018. (*Id*. ¶ 1.)

On or around December 12, 2017, McGhee became aware that Defendants were violating the Arizona Medical Marijuana Act, A.R.S. § 36-2801 *et seq*. ("AMMA"). (*Id*. ¶ 49.) McGhee, "fearing that he may . . . be subject to arrest, prosecution, and

imprisonment for his participation in the . . . enterprise," contacted the Drug Enforcement Agency ("DEA"). (*Id.*)

On January 8, 2018, McGhee met with two DEA agents to discuss the nature and extent of Defendants' violations of the AMMA and federal criminal statutes. (*Id.* ¶ 50.)

On January 15, 2018, McGhee again met with DEA agents to provide them with video and photographic evidence supporting his allegations. (*Id.* ¶ 51.)

On January 16, 2018, McGhee told several co-workers that he was cooperating with the DEA in an attempt to persuade them to cooperate. (*Id.* ¶¶ 52-53.) The facility's director of operations overheard one such conversation, and McGhee observed him quickly leave the area. (*Id.* ¶ 53.)

On January 17, 2018, McGhee received a text from his immediate supervisor instructing him not to come to work that day. (*Id.* ¶ 54)

On January 18, 2018, when McGhee attempted to come to work, David Stilley and Katherine Spillman intercepted him in the parking lot and told him that his employment was being terminated effective immediately. (*Id.* ¶ 55.)

B.   The Other Lawsuits

   1.   **The First Action**

On February 7, 2018, McGhee filed an amended complaint (the "First Action") against Defendants in Coconino County Superior Court. (Doc. 21-1.)[1] The amended complaint alleged that Defendants' discharge of McGhee violated Arizona laws prohibiting worker's compensation retaliation and that the impetus for the discharge was a shoulder injury McGhee had sustained while working as a cultivation assistant. (*Id.* at 3-5.)

On February 28, 2018, McGhee moved to dismiss the First Action because he was unable to secure legal representation. (*Id.* at 7.)

---

[1]   "A court may . . . consider certain materials [including] matters of judicial notice . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "It is well established that federal courts may take judicial notice of related state court orders and proceedings." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1136 (C.D. Cal. 2014).

On March 2, 2018, the Coconino County Superior Court granted McGhee's motion, dismissing the First Action without prejudice. (*Id.* at 9.)

### 2. **The Second Action**

On March 26, 2019, McGhee filed suit (the "Second Action") against Defendants in Coconino County Superior Court, making the same allegations as the First Action. (Doc. 21-2.)

On May 28, 2019, McGhee and Defendants filed a joint stipulation to dismiss the Second Action with prejudice. (Doc. 21-2 at 7.)

On May 29, 2019, the Coconino County Superior Court granted the parties' joint stipulation, dismissing the Second Action with prejudice. (*Id.* at 9.)

### 3. **The Third Action**

On April 3, 2019, McGhee filed suit (the "Third Action") in this District. (Doc. 21-3.) This complaint reiterated the facts undergirding the First and Second Actions and continued to allege that Defendants' decision to terminate McGhee was motivated by a desire to retaliate against him for filing a worker's compensation claim. (*Id*. at 18-21, 35.) However, this complaint alleged that the unlawful termination was a predicate act for purposes of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. (*Id*. at 21-35.)

On April 8, 2019, the judge overseeing the Third Action (Humetewa, J.) issued an order dismissing the complaint, with leave to amend, under 28 U.S.C. § 1915(e)(2) because it failed to "contain a 'short and plain' statement setting forth the basis for Plaintiff's entitlement to relief" and did "not appear to allege an injury to property []or business," as required "to state a claim for civil RICO violation." (Case No. 19-cv-8100-DJH, Dkt. 9.)

On April 10, 2019, McGhee filed a premature notice of appeal. (Case No. 19-cv-8100-DJH, Dkt. 10.)

On April 25, 2019, McGhee filed a first amended complaint. (Case No. 19-cv-8100-DJH, Dkt. 13.)

On May 14, 2019, McGhee filed a notice of voluntary dismissal of the Third Action.

(Doc. 21-3 at 80.)

On May 15, 2019, the court issued a minute entry terminating the Third Action pursuant to McGhee's notice of dismissal. (Case No. 19-cv-8100-DJH, Dkt. 21.)

C.      This Action

On May 14, 2019, McGhee initiated this action by filing the complaint and an application to proceed in forma pauperis ("IFP"). (Docs. 1, 2.)

On August 27, 2019, the Court issued an order granting the IFP application and authorizing McGhee to file the complaint. (Doc. 8.)

On October 25, 2019, Defendants filed a motion to dismiss. (Doc. 11.)

On November 1, 2019, Defendants withdrew their prior motion to dismiss (Doc. 20) and filed the now-pending motion to dismiss (Doc. 21).

On November 13, 2019, McGhee filed a response. (Doc. 22.)

On November 19, 2019, Defendants filed a reply. (Doc. 23.)

**DISCUSSION**

McGhee's seven-count complaint alleges RICO violations arising out of the termination of his employment relationship with Defendants. (Doc. 1.) Defendants seek dismissal because (1) res judicata and Federal Rule of Civil Procedure 41(a)(1)(B), the so-called "two-dismissal" rule, preclude this suit; (2) McGhee fails to state a cognizable RICO claim; and (3) the *in pari delicto* doctrine bars McGhee from bringing this action. (Doc. 21.) The first argument is dispositive, so the Court need not address Defendants' other points.

I.      Res Judiciata Effect Of The Second Action

As noted, Defendants advance two related but distinct reasons why the dismissal of McGhee's earlier lawsuits precludes him from bringing this action. The first argument is that, because "the Second Action concluded with a stipulated dismissal with prejudice," it "is *res judicata* to any claim brought or that could have been brought. Plaintiff could have asserted his present claim in the Second Action . . . [so] [i]t is now barred by *res judicata*." (Doc. 21 at 8.)

This argument is unavailing. "To determine the preclusive effect of a state court judgment, federal courts look to state law." *Intri–Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation omitted). Arizona courts apply the "same evidence" test to resolve questions of res judicata: "If no additional evidence is needed to prevail in the second action than that needed in the first, then the second action is barred." *Phoenix Newspapers, Inc. v. Dep't of Corr., State of Ariz.*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997). This contrasts with the test applied in many other jurisdictions, which "focuses on whether the new claim arises out of the same 'transaction or occurrence' that was the subject of the original action." *Id*. at 804-05. "The 'same evidence' test is quite liberal, and permits a plaintiff to avoid preclusion merely by posturing the same claim as a new legal theory, even if both theories rely on the same underlying occurrence." *Power Rd.-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1309 (D. Ariz. 2014) (internal quotations omitted).

Here, the dismissal of the Second Action does not, standing alone, preclude this action. In the Second Action, McGhee alleged that Defendants terminated him in retaliation for his filing of a worker's compensation claim. (Doc. 11-2 at 3-5.) In contrast, this action involves allegations concerning off-site conversations with DEA agents, a drug conspiracy, eavesdropping by management, and retaliation against McGhee for acting as a whistleblower. (Doc. 1 ¶¶ 48-55.) Even though McGhee's termination lies at the heart of both actions—a similarity that would have triggered claim preclusion had the Second Action been litigated in federal court, *see* Part III.B *infra*—the evidence necessary to prove each theory of liability is different. And under Arizona law, this means the dismissal of the Second Action does not result in a res judicata effect here. *Cf. Five Points P'ship v. Pinsonneault*, 835 F. Supp. 2d 753, 760 (D. Ariz. 2011) ("Plaintiffs made fraud allegations against Defendant in the underlying action . . . [and] alleged in [earlier, unsuccessful] state court that Defendant made certain fraudulent misrepresentations . . . . But Plaintiffs did not assert an alter ego claim below . . . . Because Plaintiffs' alter ego claim requires additional evidence, the Court finds that their claim is not barred by res judicata.").

II.     The "Two Dismissal" Rule—Rule 41(a)(1)(B)

Defendants also contend that "[e]ven if not barred by [res judicata due to] the dismissal with prejudice of the Second Action, Plaintiffs' claims are certainly now barred by the 'two dismissal' rule." (Doc. 21 at 10.) On this point, Defendants are correct.

### A.  Whether The Dismissal Of The Third Action Qualifies As An Adjudication On The Merits Under Rule 41(a)(1)(B)

Rule 41(a)(1)(B) of the Federal Rules of Civil Procedure provides that, although the voluntary dismissal of a lawsuit at the plaintiff's behest is ordinarily considered a dismissal without prejudice, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." *Id.* The question here is whether the dismissal of the Third Action—which was ostensibly a dismissal without prejudice, because it was triggered by McGhee's filing of a notice of voluntary dismissal—should nevertheless be considered an adjudication on the merits (*i.e.,* a dismissal with prejudice) under Rule 41(a)(1)(B).

Although the parties have not identified any published authority from the Ninth Circuit addressing the contours of Rule 41(a)(1)(B)'s "same claim" requirement, other courts have rejected the notion that "the two-dismissal rule applies only where a plaintiff's second . . . action[] assert[s] precisely the same causes of action as the plaintiff's first" and have instead recognized that "[t]he weight of authority . . . [is that] the two-dismissal rule [is] a close cousin of the doctrine of res judicata and one that is subject to ordinary res-judicata principles.  This means that a second action is 'based on or includ[es] the same claim' for Rule 41(a)(1)(B) purposes whenever it arises from the same transaction or occurrence as the first." *Jian Ying Lin v. Shanghai City Corp.*, 329 F.R.D. 36, 39 (S.D.N.Y. 2018).[2]

---

[2] *See also Melamed v. Blue Cross of Cal.*, 2012 WL 122828, *5 (C.D. Cal. 2012) ("Neither the Ninth Circuit nor the Supreme Court has specifically addressed the meaning of 'same claims' for the purposes of Rule 41(a)(1).  However, the Ninth Circuit has analogized the 'two dismissal' rule to the res judicata inquiry.") (citations omitted); 9 Charles Alan Wright et al., Federal Practice & Procedure § 2368 (3d ed. 2020 update) ("There is surprisingly little discussion in the case law of what is considered 'the same claim' for purposes of Rule 41(a).").

- 6 -

Applying this standard, McGhee asserted the "same claim" in the First and Third Actions. In the Ninth Circuit, "[w]hether two suits arise out of the 'same transactional nucleus' depends upon 'whether they are related to the same set of facts and whether they could conveniently be tried together.'" *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (citation omitted) (emphasis omitted). Here, the first part of this inquiry is easily satisfied. In the First Action, McGhee alleged that he sustained a work-related shoulder injury at some point before January 5, 2018, that he filed a worker's compensation claim on January 5, 2018, that Defendants terminated him on January 18, 2018, and that the termination was in retaliation for his pursuit of the worker's compensation claim. (Doc. 21-1 at 5 ¶¶ 2-23.) The Third Action was premised on the exact same factual allegations. (Case No. 19-cv-8100-DJH, Dkt. 13 at 16-18 ¶¶ 51-61.) The only difference between the two actions is that McGhee asserted a different legal theory in the First Action (a state-law claim for unlawful termination) than in the Third Action (a civil RICO claim). But this is an meaningless difference for purposes of assessing whether two lawsuits arose from the same set of facts. *See, e.g., Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (holding that the plaintiff's first and second lawsuits "relate[d] to the same set of facts," even though the plaintiff asserted Title VII claims in the first lawsuit and then sought to assert FMLA and FLSA claims in the second lawsuit, because "both sets of Myopo's claims arise from Litton's conduct while Myopo was an employee and specifically from the events leading to his termination"); *Jian Ying Lin,* 329 F.R.D. at 40 ("Rule 41(a)(1)(B)'s two-dismissal rule would be toothless if a plaintiff could evade it merely by adding to his original, voluntarily dismissed complaint a new cause of action arising from the same operative facts . . . .").

As for the second part of the inquiry—whether the two actions could have been conveniently tried together—McGhee argues he couldn't have brought his civil RICO claim in the Second Action because it was being litigated in state court, the AMMA made medical marijuana legal under state law, and the illegality of Defendants' actions therefore constituted a federal question that could only be heard in federal court. (Doc. 22 at 3-4.)

- 7 -

This argument lacks merit. "[S]tate courts have concurrent jurisdiction over civil RICO claims." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). *See also Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863 (9th Cir. 1995) (plaintiffs were barred, by res judicata principles, from asserting civil RICO claim in federal lawsuit because they could have asserted that claim in earlier, unsuccessful state-court lawsuit arising from same facts). Arizona state courts, moreover, have heard cases challenging the AMMA on the grounds of federal preemption. *Reed-Kaliher v. Hoggatt*, 347 P.3d 136, 141 (Ariz. 2015); *White Mountain Health Ctr., Inc. v. Maricopa Cty.*, 386 P.3d 416, 423-33 (Ariz. Ct. App. 2016).

McGhee also contends he couldn't have asserted a claim for workers' compensation retaliation under A.R.S. § 23-1501(3)(c)(iii) in the Third Action because it is a state-law claim. (Doc. 22 at 4-5.) This argument again lacks merit. The court overseeing the Third Action would have had supplemental jurisdiction over this claim under 28 U.S.C. § 1367 had it been asserted in conjunction with McGhee's civil RICO claim. Thus, McGhee could have conveniently litigated his RICO and state-law claims as part of the same lawsuit in either state or federal court. *Cf. Mpoyo*, 430 F.3d at 987 (concluding that former employee's Title VII, FLSA, and FMLA claims arose from same transaction because they "form[ed] a convenient trial unit that discloses a cohesive narrative of an employee-employer relationship and a controversial termination").

For these reasons, the dismissal of the Third Action constituted an adjudication on the merits under Rule 41(a)(1)(B).

B.     **Whether The Third Action Has A Res Judicata Effect Here**

Although, as explained above, the with-prejudice dismissal of the *Second* Action does not result in a res judicata effect here, it doesn't follow that the *Third* Action also lacks a res judicata effect. This is because the Second Action was litigated in state court while the Third Action was litigated in federal court. Thus, the Court does not apply Arizona's liberal "same evidence" test when assessing the res judicata effect of the Third Action. Instead, federal law applies. *See generally Axon Enterprise Inc. v. Vievu LLC*, 2018 WL 317289, *3 (D. Ariz. 2018) ("[F]ederal courts apply the transactional test to

determine the res judicata effect of a prior federal judgment, but defer to state res judicata rules when evaluating the preclusive effect of a state court judgment."). In federal court, "[r]es judicata applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *ProShipLine*, 609 F.3d at 968 (quotation omitted).

### 1. Identity Of Claims

When evaluating the first factor res judicata factor—identity of claims—courts look to the following four considerations: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Id.* (citation omitted). Courts do not apply these criteria "mechanistically." *Mpoyo*, 430 F.3d at 987.

Here, the Court has already determined that the first consideration—a common transactional nucleus of facts—is present. The Ninth Circuit has "often held the common nucleus criterion to be outcome determinative." *Mpoyo*, 430 F.3d at 988. "In most cases, the inquiry into the same transactional nucleus of facts is essentially the same as whether the claim could have been brought in the first action." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012) (internal quotation omitted).

In any event, the remaining considerations are inconclusive. The Ninth Circuit in *Mpoyo* found the second and third considerations "not conclusive" in a similar case because, although the plaintiff alleged that the "same overall harms and primary rights" were at issue, the plaintiff's assertion of different legal theories presented "different particular rights." 430 F.3d at 987. As for the fourth consideration, although the Third and Fourth Actions rely on some different evidence (the shoulder injury and the conversations with DEA agents), there is meaningful evidentiary overlap between the two suits (McGhee's employment and termination).

Where, as here, the final three criteria are inconclusive, the finding that the Third

- 9 -

and Fourth Actions share a common nucleus of operative fact is "outcome determinative under the first res judicata element." *Myopo*, 430 F.3d at 988.

### 2. Final Judgment On The Merits

The second element of the res judicata test asks whether the earlier lawsuit "reached a final judgment on the merits." *Id.* at 987 (quotation omitted). As discussed in Part II.A above, it did—pursuant to Rule 41(a)(1)(B), McGhee's dismissal of the Third Action resulted in an adjudication on the merits.

### 3. Identical Parties Or Privies

The final element of the res judicata test asks whether the earlier lawsuit "involved identical parties or privies." *Myopo*, 430 F.3d at 987 (quotation omitted). This element is satisfied here, too—the parties in the Third and Fourth Actions are identical.

### 4. McGhee's Other Arguments

Notwithstanding all of this, McGhee urges the Court to refrain from dismissing this action because (1) he did not serve the complaint in the Third Action on Defendants, so the court never had personal jurisdiction over them; (2) requiring him to plead his RICO claim simultaneously with his state-law claim would have reduced the statute of limitations by 75%, which raises questions regarding his due process rights; and (3) there is a compelling public interest in hearing RICO cases. (Doc. 22 at 5-6, 8-10.)

These arguments lack merit. First, "[a] federal action is commenced by the filing of the complaint, not by service of process." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982). Defendants in this case were the defendants in the Third Action, even before service, and have standing to invoke the two-dismissal rule. *See also Engelhardt v. Bell & Howell Co.,* 299 F.2d 480, 484-85 (8th Cir. 1962) ("Plaintiff's contention that the dismissal of the first action was a mere nullity and can be disregarded because the dismissal was filed at a time before the court had acquired jurisdiction over the defendant is without merit.").

Second, the statute of limitations for McGhee's RICO claim was not shortened. Although it's true he had a one-year window during which he could have asserted both his

state-law and RICO claims, the RICO statute of limitations itself was not affected.

Third, as the Seventh Circuit put it when confronted with a request for an exception to the two-dismissal rule, "the federal rules are carefully-crafted instruments designed to achieve, by their uniform application, fairness and expedition in the conduct of federal litigation. Therefore, when a party contends that a court should disregard the express language of a carefully-drawn rule of procedure, that party bears a heavy burden of showing that a departure from the plain language is justified." *Sutton Place Dev. Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 640 (7th Cir. 1987). Although there may be a public interest in the merits-based resolution of RICO claims, Rule 41(a)(1)(B) applies here and the mere fact McGhee has brought a RICO claim does not itself justify a departure from the plain language of the Rule. *Codispoti*, 63 F.3d at 869 (applying res judicata principles to preclude plaintiffs from asserting civil RICO claim).

Accordingly, **IT IS ORDERED** that Defendants' motion to dismiss (Doc. 21) is **granted**. The Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 21st day of April, 2020.

Dominic W. Lanza
United States District Judge